Curia, per Harper, Ch.
The first ground of appeal relates to the validity of the mortgage to the South Western Rail Road Bank. The ground taken is, that “an unregistered mortgage of personal property, of which the mortgagor retained possession, is void against bona fide creditors, without notice, and more especially against creditors acquiring a lien on the property.” I understand from this, and the course of the argument, that it is contended on behalf of the Bank of Charleston, that if the mortgagee of an unregistered mortgage of personal property permits the property to remain in the hands of the mortgagor, the mortgage is absolutely void ; and this not by virtue of the enactment of any statute; for it is admitted that the Act of Assembly of 1698, (the only statute relating to mortgages or conveyances of personalty,) does not render them void for \yant of registration. Nor does the argument resf *459 on any rule of law, apart from the question of fraud. It must mean, then, that the permitting of the mortgagor of an unregistered mortgage to retain possession of the mortgaged property, is such conclusive evidence of fraud as can neither be explained nor rebutted; that it is an artificial rule of evidence, by which certain conclusions are drawn from certain appearances ; as in the instance of a volunta^ ry conveyance by a person indebted at the time, and who afterwards becomes insolvent. This is concluded to be fraudulent, without any enquiry into the actual fraudulent intention. In the absence of any such artificial rule, it is necessary that the actual fraudulent intention should appear, in order to vitiate the instrument; as in the instance of a voluntary conveyance alleged to have been made with a view to future indebtedness.
I am not aware of any such artificial and positive rule; The cases quoted to establish it, of Ryall vs. Rolle, 1 Atk. 165; of Worseley and DeMattos, 1 Burr. 467, and others* were determined on the positive terms of the English statute of Bankruptcy, 21 Jac. 1, C. 19, which provided that if a person having conveyed his goods shall, at the time of his bankruptcy, be found in possession of such goods, by permission of the owner, he shall be reputed and adjudged the true owner. It is true that the subject is fully considered with reference to the common law, and the statute of 13 Eliz.; but with reference to these, it is not said that there is any such positive rule. It is said in Ryall vs. Rolle, after a review of the cases- — “from all these cases, it appears that upon the construction of the statute 13 Eliz., there is no ground to make a distinction between conditional and absolute sales of goods, if made with intent to defraud creditors; but a court or jury are left to consider this from the circumstances of the case.”
It is certainly established by the case of Maples vs. Maples, Rice Ch. 300, that the retaining possession of mortgaged, property, even after condition broken, is no conclusive evidence of fraud. It is true that, in that case, the mortgage was recorded very soon after its execution, but this is only mentioned incidentally, as one of the circumstances in deciding on the bona fide or fraudulent charac *460 ter of the transaction. The case of Gist vs. Presley, 2 Hill Ch. 318, was to the same effect, though the decision in that case may be somewhat modified; and I am inclined to think rightly, in case of a mortgage — with respect to the distinction between the mortgage for a previously existing debt, and for one created at the time. It does not appear from the report, whether the mortgage was regis-teted or not, nor was the case considered or decided with any reference to that circumstance. It is said, however, that the retaining of mortgaged property, even after condition broken, is different from the case of an absolute sale. “In the latter case, it is the common course that possession shall be transferred with the title, and the departure from the common course is to be accounted for. But it is not the common course that mortgaged property should be seized the moment the condition is broken.” It is said that such retaining of possession may be a badge of fraud, though not so strong as in the case of an absolute sale. We have no authority to establish a rule, as that the holder of a mortgage of personal property, which he has neglected to register, must seize the property on the day the condition is broken, or lose his lien.
Then regarding these circumstances of failing to register, and to take possession of the property, as badges of fraud, it remains to enquire if these badges have been stripped off, or if there was actual fraud. Secret liens, though they are always regarded with suspicion, and are indicative of fraud, are not conclusive evidence of it. A contract to sell, though there is no office for its registration, and it is necessarily kept private, will prevail against a subsequent creditor, even a judgment creditor. Then the actual fraudulent intention must be established, and it must appear that some one would be injured if the deed or transaction was permitted to stand. For if no one is injured, no one has a right to complain. Fraud is inferred, from the circumstance of Isaac E. Holmes’s request not to have the mortgage recorded, and the acquiescence in that request, connected with the subsequent failure to take possession. That request may have been made with one of two motives, either, that apprehending insolvency, he *461 wished to obtain credit, and get hold of the property of others, on the faith of the property in his possession, or he may only have wished to avoid alarming his creditors, and bringing them upon him at once; so that he might have time to extricate himself from his difficulties. The former I should regard as a fraudulent purpose, but not the latter.
From the testimony of James G. Holmes, as to the circumstances of Isaac E. Holmes, the latter is most probable ; and it does not appear that after this transaction, Isaac E. Holmes, in fact, ever gained, or attempted to gain, any new credit on the faith of the property in his possession; But whatever may have been the intention, it is certain that the Bank of Charleston has suffered no injury. It does not appear precisely when the debt to that bank was contracted; but from the date of their judgment, little more than six months after the da(e of the mortgage, it is probable, I might almost say certain, that it was before the execution of the mortgage. The registration, or the taking of possession at the time of the mortgage executed, would have done them no good in respect of putting them on their guard against giving that credit. I apprehend, however, that the Rail Road Bank could not have seized the property before condition broken. For though there may have been no covenant for retaining possession, and the legal title may have been in the bank, yet this court regards the mortgage merely as a security, and would restrain the mortgagee from enforcing his security until he was entitled to have his debt. . The debt, in this case, was due in 1840, after the judgment and execution of the Bank of Charleston, and it was a matter perfectly immaterial to that bank, whether the Rail Road Bank should, or should not, take possession of the slaves. If they had been seized, the former bank would have been in no better condition. Whatever may have been intended, there was no fraud on them, nor, as I said, does it appear that there is any other person who was, or can be, injured by the neglect to register, or to take possession.
The reasoning of the Chancellor is entirely conclusive, so far as regards the lien of the execution on the moiety of *462 the slaves mortgaged to the Rail Road Bank. The legal title of this moiety was in the Rail Road Bank, and it is' not necessary to argue that the lien of an execution will not attach on a mere equity. If the negroes were sold by the sheriff, no doubt the mortgagee might recover them at law. The equity of redemption in land may be sold under execution, but it is because that is the legal estate. As to the other moiety, it is unnecessary to enquire, as the priority of title of the Bank of the State is admitted.
We are next to enquire as to the effect of the assignment of the judgment against James G. Holmes by the Bank of Charleston. The bank assigns to C. C. Morris, the complainant in the second case stated, “the said two judgments, and all sum and sums of money, and benefit whatsoever, that may be obtained by means of the same, or any execution or executions issued thereupon, and all the estate, right, title, and interest whatsoever, of the said bank, in the same,” and constitute him their attorney irrevocable, to prosecute the said executions. There is no doubt but that the assignee has all the rights of the bank, and may prosecute the executions to any extent that the bank could have done. What, then, were those rights'? Originally, and before the courts of law had assumed an equity jurisdiction, the plaintiff, who had obtained separate judgments against the principal and surety, might have enforced his execution, at law, against both, to the full amount of both judgments, and it would have been necessary to come into this court, to restrain him from a double satisfaction of his debt. What, then, would have been the equities as between the bank and James G. Holmes, if he had came into court for such purpose'? No doubt, according to the authority of Hayes vs. Ward, 4 Johns. C. C. 190, and King vs. Baldwin, 2 Johns. C. C. 562, a surety may come into this court to compel the creditor to collect his debt of the principal; or, as stated by Sir William Grant, 3 Meriv. 579, to compel the principal to relieve him by paying off the debt. To such a suit by James G. Holmes, Isaac E. Holmes must have been a party, and the equity of.the former would have been to restrain the bank from having a double satisfaction, and to compel them to apply *463 the assets of Isaac E. Holmes, so far as they would go, to the satisfaction of their demand; he, James G. Holmes, being liable for any balance that, by a return of nulla bona, or any other sufficient evidence of insolvency, might be ascertained to remain due after the assets exhausted ; which balance would be decreed against him.
Such would have been the rights of the bank in this court; and such, and no other, are the rights of the as-signee. But it is familiar that the courts of law having-assumed an equity jurisdiction, does not deprive this court of its well established jurisdiction. And it is plain, moreover, that the equities are very inadequately administered by the courts of law ; for, though they restrain a double satisfaction, they do not recognize the distinction of principal and surety..
It is ordered that the decree in the first stated case be modified according to the views herein expressed, and the decree in the second case affirmed.
Dunkin, Ch., concurred.
Johnson, Ch. I concur in the case of the Bank vs. Gourdin.
Johnston, Ch., absent from indisposition.